## Richmond

MARY GLADYS RICHARDS CARPENTER, etc.

v.

BROWN HUTCHESON CARPENTER, etc.

August 30, 1979.

Record No. 771715.

Present: I'Anson, C J., Carrico, Cochran, Harman, Poff and Compton, JJ.

*George A. Christie (Robert L. Gutterman; Christie and Gutterman,* on brief), for appellant.

*Richard S. McLellon (Bangel, Bangel & Bangel,* on brief), for appellee.

HARMAN, J., delivered the opinion of the Court.

This is an appeal from a decree denying consent for Mary Gladys Richards Carpenter (mother or Mrs. Carpenter) to remove the residence of her two minor children, then ages seven and nine, from the Commonwealth of Virginia and permanently restraining and enjoining such change of residence by the children without prior approval of the court. The sole issue here is whether the trial court abused its discretion in refusing the consent sought by Mrs. Carpenter.

On April 14, 1976, the Chancellor awarded Mrs. Carpenter a divorce from her husband, Brown Hutcheson Carpenter (father or Mr. Carpenter) on the ground of desertion. In this decree the court confirmed, ratified and incorporated a stipulation between the parties under which Mrs. Carpenter, who waived her right to alimony, was awarded custody of the two children born to the union, a son in April, 1968, and a daughter in October, 1969. Under the stipulation the father, who obligated himself to pay $250 monthly for support of his children, was entitled to have the children visit with him on specified birthdays and holidays, every second weekend, every Wednesday afternoon and for three weeks each summer.

In July, 1977, upon learning that his former wife planned to move the children to New York City, Mr. Carpenter filed with the court a sworn petition alleging that such a move would be detrimental to the best interest of his children and praying that their custody be awarded to him. On July 19 the court entered an *ex parte* decree temporarily enjoining Mrs. Carpenter from removing the children from Virginia pending a hearing.

The court convened such a hearing on August 3 and each party appeared with counsel. Inquiry by the court established that neither party questioned the fitness of the other as a parent and that the sole issue for determination was whether the wife's proposed move to New York would serve the best interest of the children.

The father's testimony established the children have lived in the Norfolk-Virginia Beach area since birth. Both were well adjusted and doing well in school. They had many friends and playmates in the neighborhood where their father resided as well as in the neighborhood where they resided with their mother. Mr. Carpenter related that he had been able to maintain a close and affectionate relationship with his children because he had been able to see them often. He had also kept them, with their mother's consent, for periods in addition to those provided by the decree. These periods aggregated several weeks during the preceding year.

Mr. Carpenter viewed his frequent visits with his children and their activities together as beneficial to their education, training and de-

velopment. He stated that because of the distance and expense involved, he would not be able to see them more than a few times a year if they moved to New York. He also stated that he believed the Tidewater area of Virginia had many cultural and recreational advantages and was a more desirable place to raise his children than New York City.

Mrs. Carpenter's testimony confirmed that a close relationship existed between the father and his children and that she had permitted the children to visit and reside with their father for periods in addition to those provided in the stipulation. She testified that she was a college graduate with a degree in chemistry and had completed some additional courses in business administration. She was unemployed and was receiving unemployment benefits at the time of the hearing. Since her divorce, she related that she had not been able to find employment as a chemist although she had applied to most employers of chemists in the Tidewater area. Because she had been unable to obtain employment as a chemist, she had worked for several employers in lower-paying clerical jobs. Because her own earnings, unemployment benefits and the child support payments provided by her former husband were not sufficient to pay the living expenses of her household, she had been forced to seek and receive financial assistance from her mother.

When asked why she wanted to move to New York, she stated that her employment opportunities would be better there, that her children would have greater cultural and educational advantages there than in Tidewater and that she wanted to live closer to her mother and other relatives who lived in New York.

Cross-examination revealed that Mrs. Carpenter had filed job applications for employment as a chemist with several employers in the New York area but, at the time she testified, had not received an offer from any of them. If permitted to move the children to New York, she proposed to live with her mother and stepfather until she was established and her income permitted her to rent her own residence. She also revealed that on one occasion she had been employed for a short time as a chemist and admitted that she was "fired" from that position. When asked if she had sought employment as a chemist elsewhere in Virginia, Mrs. Carpenter stated that she had not.

Based on the foregoing evidence the court, after commenting that Mrs. Carpenter's proposal was fanciful, entered a decree enjoining Mrs. Carpenter from permanently removing the children from Virginia without prior approval from the court. This decree, by implication, denied the consent sought by Mrs. Carpenter and the change of custody

requested by Mr. Carpenter.*

The mother argues that the Chancellor erred in not finding that the best interest of the children would be served by permitting her to move them to New York. She points to evidence that she was not able to meet her household expenses in Virginia without assistance from her mother and urges that her increased earnings as a chemist in New York would enable her to provide her children with a "measurably enhanced" life. She says that both children are "gifted" and that New York would provide them with "a more stimulating environment" in which to develop. Another factor making the move to New York desirable, she says, is "the presence of [her] family, including her mother, stepfather, stepbrother[s] and several cousins."

While these were factors to be weighed and considered by the Chancellor, the record also discloses other factors relevant to the issue before him. The evidence showed:

(1) that the children were developing well in the environment where they resided;

(2) that both were happy and well adjusted and were making good grades in school;

(3) that both children had been able to maintain a close and affectionate relationship with both parents;

(4) that both parents continued to play an active role in the care, education and development of their children;

(5) that the number and frequency of the father's visits with his children would be greatly reduced if they were living in New York;

(6) that the mother's expectations of increased income in New York were, at the very least, questionable and speculative; and

(7) that the cultural and educational advantages in New York City were not significantly greater than the cultural, educational and recreational advantages in Tidewater Virginia.

After weighing all factors, the Chancellor concluded that the best interest of the children would not be served by moving them to New York. The decree of the Chancellor determining questions of fact on conflicting evidence *ore tenus* has the weight of a jury verdict, and will be permitted to stand unless plainly wrong or without evidence to support it. *Mundy* v. *Hesson,* 215 Va. 386, 392, 209 S.E.2d 917, 921

---

* Shortly after entry of the decree appealed from, Mrs. Carpenter filed a petition seeking to dissolve the injunction and to obtain the court's consent to move the children to New York. An *ore tenus* hearing was held on this petition and the court entered a decree which again refused the requested consent. Since no appeal was taken from this latter decree, we will not consider the proceedings subsequent to the decree from which Mrs. Carpenter appealed.

(1974). Since the Chancellor's ruling is not plainly wrong or without evidence to support it, we find no abuse of discretion and will affirm the decree.

*Affirmed.*