**Richmond**

WILFRED PARKER SIMMONS

v.

SUSAN CLARK SIMMONS

No. 0287-85

Argued October 16, 1985

Decided January 21, 1986

COUNSEL

Morton B. Spero (Spero & Diehl, on briefs), for appellant.

Timothy J. Hauler (Elliott, DeBoer & Hauler, Ltd. on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In this appeal Wilfred Parker Simmons (appellant) challenges a circuit court order denying his petition for a change of custody and allowing his former wife, Susan Clark Simmons (appellee), to move from Virginia to Florida with their four minor children. We are asked to decide whether the court erred in (1) denying a change of custody, and (2) permitting Mrs. Simmons to move with the children to Florida over the objection of Mr. Simmons. We fnd no error and affirm the order of the trial court.

The parties were divorced on February 24, 1984. Mrs. Simmons was granted custody of the parties' four children, while Mr. Simmons was given extensive visitation rights. Mr. Simmons remarried in June 1984. Shortly thereafter, Mrs. Simmons made known her plans to move to Florida with the children in order to attend college and to be closer to her family. As of the date of the hearing in the circuit court, Mrs. Simmons had not enrolled in college. On the basis of Mr. Simmons' remarriage and Mrs. Simmons' proposed move, Mr. Simmons filed a petition in the Dinwiddie County Juvenile and Domestic Relations District Court on August

2, 1984, seeking a change of custody or in the alternative a ruling that Mrs. Simmons be prohibited from taking the children to Florida.

The juvenile and domestic relations district court ordered that custody remain with Mrs. Simmons, and permitted her to move the children to Florida. Mr. Simmons appealed to the circuit court. That court, in a letter opinion dated dated January 2, 1985, confirmed the order of the juvenile and domestic relations district court while granting liberal visitation rights to Mr. Simmons. An order to that effect was entered on February 8, 1985. This appeal followed.

A wealth of information and assertions were placed before the courts below. Mr. Simmons asserted that it would be in the best interests of the children if they remained in Virginia. He argued for custody on the grounds that he owned a large home on a spacious lot that had been in his family for three generations; that his family lived nearby and could assist him in the upbringing of his children; that he was recently married to a woman who loves children and would assist in the upbringing of his four children; and that he had two horses that were a source of much enjoyment for the children. Additionally, Mr. Simmons argued that Mrs. Simmons' move to Florida had not resulted in her enrollment in college. In fact, his evidence established that she worked for a wage of $4.00 per hour, the same as she was making in Virginia before her move. Mr. Simmons also noted that two of the children have learning disabilities, and were enrolled in special education programs in Virginia. He claims that such programs are not available for one of the children in Florida.

Mrs. Simmons asserted that each of these children receives the care that she needs. Futhermore, she asserted that there are a number of factors which would be in her best interests and in the children's best interests to justify the move to Florida and her retention of custody. Her family lives there; she and the children could live with her family and pay no rent or babysitter costs, thereby attaining more financial security and stability. Additionally, she maintained that the warmer climate would be bettter for the children's health and recreational activities. She also commented that Mr. Simmons would be unable to attend to the children's needs because he worked 50 to 60 hours per week, and that he only began taking an interest in the children after the divorce,

while she had cared for the children all along.

Our review of this case is controlled by well-established precedent. In custody disputes the welfare of the children is of primary and paramount importance. *Durrette v. Durrette*, 223 Va. 328, 331, 288 S.E.2d 432, 433 (1982). In determining the best interests of the children, a court must consider all the evidence and facts before it. *Brown v. Brown*, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977). The trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it. *Florance v. Florance*, 197 Va. 432, 435, 90 S.E.2d 111, 113 (1955). It is appropriate that this be the rule governing our review of appeals because the trial judge was in a position to see and hear the witnesses, and to closely examine the evidence. As such, his findings are entitled to an appropriate degree of respect. *Brown*, 218 Va. at 200, 237 S.E.2d at 92.

Here, the trial judge in his letter opinion wrote that he had "heard and considered much testimony concerning housekeeping standards, redecorating, babysitters, Florida schools and changes in residence." He remained unpersuaded that the evidence justified either a change in custody or the denial of Mrs. Simmons' request to move the children to Florida. The court concluded that the move to Florida was not "motivated by spite or a desire to deprive her [former] husband of visitation." Additionally, the court concluded that Florida offered educational and training opportunities to Mrs. Simmons, along with the possibility of a more stable life for the children, particularly in an economic sense.

Although much evidence was presented by each party in an attempt to discredit the other, neither parent claimed that the other was unfit. Indeed, from the record it appears that neither parent is unfit. We therefore review the record to determine (a) what is in the best interests of the children, and (b) whether the trial court's decision is plainly wrong or without evidence to support it.

We note with regret that this case presents the all too familiar dilemma in our increasingly mobile society where the noncustodial parent faces an extended physical separation from his or her children when the custodial parent seeks to move to another state. Seeking a change of custody to the noncustodial parent is often felt to be the only available recourse of such a parent and seldom

addresses the true issue of the best interests of the children.

■ Code § 20-108 permits the court to revise and alter a prior decree concerning the custody of children and to make a new decree concerning the same as the circumstances of the parents and the benefit of the children may require. Code § 20-107.2 enumerates the factors for the court to consider in determining the custody of children, including consideration of the welfare of the children. It is well settled in Virginia that the best interests of the children controls the issue of a change of custody or the issue of a custodial parent moving the children to another state.

The best interests of the children dictate that they be raised in a stable and loving environment. Although questions were raised about Mrs. Simmons' housekeeping habits, and choice of babysitters, her love and concern for the welfare of the children is undenied. In addition, the move to Florida will give Mrs. Simmons the opportunity to provide the children a more stable home life and improve their financial situation. Furthermore, in accordance with the court's decision, Mr. Simmons will not be denied the privilege of participating in the children's upbringing. He was given liberal visitation rights of up to eight weeks per year.

We do not hold that the interests of the children could not be adequately met by Mr. Simmons and his new wife. However, the trial judge, upon an examination of the facts and the factors enumerated in Code § 20-107.2, and using his wisdom and experience in a conscientious manner, determined that the *best* interests of the children would be served by continuing the custody award in favor of Mrs. Simmons and permitting her to move with the children to Florida. That determination is not plainly wrong and is supported by the evidence.

■ The Supreme Court has previously addressed the issue of a custodial parent's proposed change of residence to another state. In *Carpenter v. Carpenter*, 220 Va. 299, 257 S.E.2d 845 (1979), the custodial parent (mother) wished to move the two minor children from Virginia to New York. Upon objection of the noncustodial parent (father), the court denied the mother's request because it determined that, under the circumstances, the move was not in the best interests of the children. *Id.* at 302, 257 S.E.2d at 848. Recently, the court held that *Carpenter* permits a trial court to allow a custodial parent to remove a child from Virginia, but

only after a determination has been made that the move is in the child's best interests. *Gray v. Gray*, 228 Va. 696, 698, 324 S.E.2d 677, 678 (1985). Such a determination was made by the trial judge in the present case.

Counsel for Mr. Simmons in his brief and at oral argument expressed concern about the educational well-being of one of the children. That child, aged seven, is classified as emotionally disturbed. In Virginia, she was given resource counseling that would assist her in dealing with her situation. The record reveals that Florida provides some degree of counseling to the child. The extent and nature of that counseling is not evident, however. The trial judge found nothing to indicate that the counseling and educational services offered in Florida are inadequate to meet the child's needs. We share the concern of counsel for Mr. Simmons but we find nothing in the record to indicate that the services offered in Florida will not meet the needs of the child.

In connection with the concern over counseling and educational opportunities for the child, Mr. Simmons would have this court adopt the reasoning of the New Jersey Supreme Court in *Cooper v. Cooper*, No. A-159-84, slip op. (N.J. Sup. Ct. Nov. 14, 1984). It must be noted that New Jersey has a statute which requires the consent of the noncustodial parent, or the court, before the custodial parent may remove minor children from New Jersey. N.J. Stat. Ann. § 9:2-2 (West 1976). In *Cooper*, that court held:

> When removal is challenged under *N.J.S.A.* 9:2-2, we hold that to establish sufficient cause for the removal, the custodial parent initially must show that there is a real advantage to that parent in the move and that the move is not inimical to the best interests of the children. Removal should not be allowed for a frivolous reason. The advantage, however, need not be a substantial advantage but one based on a sincere and genuine desire of the custodial parent to move and a sensible good faith reason for the move. To establish that the move is not inimical to the best interests of the children, the moving party must show that no detriment to the children will result from the move. For example, if a child were attending a special education program or receiving medical care which was not available in a comparable form in the area where the custodial party wished to move, or if a child

had a medical problem which would be aggravated by the move, the threshold requirement would not be met. The decision as to whether the moving party has met the threshold requirement does not include consideration of the visitation issue. It is only after the custodial parent establishes these threshold requirements that the court should consider, based on evidence presented by both parties, visitation and other factors to determine whether the custodial parent has sufficient cause to permit removal under the statute.

*Cooper*, slip. op. at 17-18. (footnote omitted.)

We cannot, and do not, accept the reasoning of the *Cooper* court. First, Virginia has no statute akin to N.J. Stat. Ann. § 9:2-2. It is not the law in Virginia that a custodial parent seeking permission to remove children from the Commonwealth must establish (a) a real advantage to that parent in the move, and (b) that the move is not inimical to the best interests of the children. The rule in Virginia, as dictated by *Carpenter* and *Gray*, merely states that the move will be allowed if the trial court determines it is in the best interests of the children.

Second, we cannot agree in principle with the New Jersey rule. The *Cooper* court stated that "the moving party must show that *no* detriment to the children will result from the move." *Cooper*, slip op. at 17. (emphasis added). We believe that the case is rare in which the removal of children from their noncustodial parent's state of residency does not result in some detriment. A child's development is best facilitated in an atmosphere of stability, love and concern. This is especially true when that love and concern flows from both parents. Oftentimes, the removal of children from the state of residency of one of those parents makes it more difficult for the absent parent to express and demonstrate such love and concern. The relationship between parent and a developing child, no matter how close, affectionate or demonstrative, naturally suffers as the distance between the two increases. As such, questions of custody and removal from the noncustodial parent's state of residency involve a balancing of interests. More often than not there are advantages and detriments on both sides of the issue. A trial court's role is to weigh those concerns and conscientiously seek the solution that serves the *best* interests of the children.

Third, as noted, although there is some concern about the counseling and educational opportunities available to the seven year old in Florida, it has not been shown that the needs of this child will not be adequately met there.

The trial court, upon consideration of the evidence before it, determined that the best interests of the children dictated that they remain with their mother, that the father be given liberal visitation rights, and that the move to Florida be allowed. We hold that these findings are not plainly wrong and are supported by the evidence. Accordingly, we affirm.

*Affirmed.*

Benton, J., and Keenan, J., concurred.