COURT OF APPEALS OF VIRGINIA


Present: Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


PEDRO F. BECERRA-CELY

                                    MEMORANDUM OPINION[*]

v.        Record No. 1798-96-1    BY JUDGE JOSEPH E. BAKER
                                      APRIL 15, 1997

JUDY AMICK-BECERRA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kenneth N. Whitehurst, Jr., Judge

James A. Evans (Dinsmore, Evans & Bryant, on
brief), for appellant.

Paul M. Lipkin (Goldblatt, Lipkin & Cohen,
P.C., on brief), for appellee.


    Pedro F. Becerra-Cely (husband) appeals from a decree of
divorce entered by the Circuit Court of the City of Virginia
Beach (trial court). Husband contends that the trial court erred
in granting Judy Amick-Becerra (wife) sole custody of their minor
child, and in limiting husband's visitation such that he may not
have overnight visitation with their child. Husband further
asserts that the trial court erred in awarding wife $446 monthly
child support and in holding that husband was in arrears in
support payments in the sum of $19,246.

    As the parties are familiar with the record, we recite only
those facts necessary to an understanding of our opinion. The
judgment of the trial court is presumed correct, and the burden
is on the party alleging reversible error to show by the record

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

that reversal is the remedy to which he or she is entitled. Steinberg v. Steinberg, 11 Va. App. 323, 326, 398 S.E.2d 507, 508 (1990).  We will not set aside the trial court's judgment unless the judgment is plainly wrong or without evidence to support it. Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).

## I. and II.  Custody and Visitation

The parties married on July 13, 1982 and separated on August 31, 1994.  The record establishes that husband was having an adulterous affair with Melissa Gavrish during the parties' marriage.  Gavrish gave birth to a child by husband and was pregnant by him with a second child at the time of the parties' divorce.  The trial court found that husband committed adultery, and the record supports that finding.

Two children were born of the parties' marriage, one having died after the parties separated.  Sole custody of the surviving child, age nine, was awarded to wife with the right of reasonable visitation to husband; however, husband was denied overnight visitation.  The record discloses that husband intended to move to Ireland with Gavrish and the children born of her affair with husband.  In matters of custody and visitation, the best interests of the custodial child are always paramount and within the sound discretion of the trial court.  The trial court's decision thereon will not be reversed in the absence of a showing of abuse of discretion.  Under the facts contained in this

- 2 -

record, no abuse of discretion has been shown.

### III.  Child Support

In computing the amount of child support, the trial court accepted the commissioner's report, which included a guideline worksheet that determined husband's monthly earnings to be $3,583, and accordingly ordered monthly support of $446.[1]  The record does not support the trial court's finding with respect to husband's monthly earnings.  The last annual earnings of husband shown by this record are approximately $27,000 which he was not earning at the time this matter was heard below.  The only monies shown by the record to have been received by husband thereafter were annual student loans from the "federal government" in the sum of $36,000, which the record further discloses must be repaid by husband.  That repayable loan may not be imputed as income to husband.  Accordingly, we reverse the trial court's finding relative to monthly support payments and remand this cause for further consideration of that issue.

At oral argument, husband conceded that in making an appropriate support award it may not be error to impute previous annual income based upon previous years in which actual earned

---

[1]Wife argued that the trial court's finding of fact that husband earned $26,950 during his last year of full employment justifies the amount $446 in monthly support.  While the trial court did find that husband earned $26,950 during his last year of full employment, it specifically stated that the amount of support was determined based upon an imputed income to husband of $43,000 ($3,583 per month).  This sum included a $36,000 loan obtained by husband and a $7,000 loan for which husband applied.

income was shown.

## IV. Arrearages

Prior to their separation, on December 31, 1993, the parties executed a Final and Permanent Separation and Property Settlement Agreement (PSA). In this appeal, we discuss only the provisions in the PSA concerning custody and support for the child. As to child support, the PSA provided as follows:

> 9. Child Support. Child support shall be paid by the parent who does not have primary physical custody of the children to the parent who has primary physical custody at the time of the payment commencing on January 1, 1994 in the amount of $_____ per month. Husband is currently in medical school and has minimal income, but is expected to contribute to child support based upon what income he does have. . . .

As can be seen, the dollar amount was left blank; however, in the margin opposite paragraph 9, the words "house mortgage payment" were handwritten and initialed by the parties. The record clearly discloses that the amount of that monthly payment was $931.64.

At the time the PSA was executed, the parties were living together in the same house with their two children.[2] They continued to live together for an additional eight months, apparently jointly operating three separate Montessori schools from which they received income. Thus, neither party had exclusive "primary custody" of the children until they separated

---

[2]One child died in an accident prior to the entry of the final decree of divorce from which this appeal emanates.

on August 31, 1994.  Until August 1994, husband paid $931.64 each month to wife.  Notwithstanding that wife has continually retained "primary custody" of the surviving child, husband thereafter did not make that monthly payment.

On April 13, 1995, wife instituted a divorce suit against husband.  A pendente lite hearing was held in the trial court on April 28, 1995.  We were not provided a transcript of that hearing and neither counsel for the parties in this appeal was present at the pendente lite hearing.  A temporary support decree was entered which gave wife custody of the child and ordered husband to pay wife $125 per month beginning May 1, 1995 for support of the child.[3]  The order recites that the support award is based on husband's income of $250 per month and wife's monthly income of $1,333.

The pendente lite order further provided that "[n]o support arrearages exist at this time."  The order stated that the findings were predicated on "having considered the testimonial and documentary evidence presented his [sic] date"; however, neither the reason for the finding of no arrearages nor the evidence considered in making the finding are in the record before us.  The order contained a further provision that as the $125 per month support obligation becomes due and is unpaid, it thereby "creates a judgment by operation of law."  Upon familiar

_____

[3]The trial judge who entered the pendente lite order was not the judge who entered the final divorce decree.

principles, the order is presumed correct.  Steinberg, 11 Va. App. at 326, 398 S.E.2d at 508.

At trial, wife requested that the trial court enter a judgment for "arrearages."  She asserted that husband owed her for the monthly payments described in the margin of paragraph 9 of the PSA which husband had not paid since July 1994.  Wife's assertion disregards the trial court's finding in the pendente lite order that as of April 28, 1995, there was no arrearage.  In addition, the pendente lite order established that husband's support obligation was $125 per month.  That order may not be retroactively modified.  See Code § 20-108; see also Cofer v. Cofer, 205 Va. 834, 140 S.E.2d 663 (1965); Taylor v. Taylor, 10 Va. App. 681, 394 S.E.2d 864 (1990).

At the hearing before the commissioner, the PSA was presented and marked P-1.  Neither party wanted the PSA to be incorporated into the final decree precisely as that document was written.  Husband wanted only the PSA provisions pertaining to custody and visitation incorporated into the final decree and objected to all other provisions.  Wife wanted all of the PSA provisions incorporated into the final decree except for the custody and visitation provisions.  In addition, wife wanted a judgment for arrearages beginning with the payment due under the PSA in August 1994.  In its final decree of divorce, the trial court confirmed the commissioner's report, granted wife a divorce on the ground of husband's adultery, dismissed husband's

cross-bill, and dissolved the bonds of matrimony between the parties. It affirmed, ratified and incorporated the PSA in part, as it is authorized by law to do, see Frye v. Swarting, 4 Va. App. 173, 178-79, 355 S.E.2d 342, 344-45 (1987); Rodriguez v. Rodriguez, 1 Va. App. 87, 90, 334 S.E.2d 595, 597 (1985), and directed the parties to comply with the portions incorporated by use of the following paragraph:

> Except as to the matters dealing with Veronica's custody and support, the Agreement, which is filed with the papers in this cause, be and the same is hereby affirmed, ratified and incorporated as a part of this decree as if fully set forth herein and the parties are directed to comply with same.

Having specifically excluded that portion of the PSA upon which wife bases her claim of arrearages, the trial court was without jurisdiction to render a judgment concerning the excluded provisions.[4]

> The Supreme Court in Shoosmith v. Scott, 217 Va. 789, 232 S.E.2d 787 (1977), distinguished the effect of a divorce decree that approves a contract between the parties without specifically incorporating the contract or ordering the husband to perform its obligations, and a divorce decree that specifically incorporates the contract or orders the husband to perform its obligations. In the former, the decree is an approval of a private contract and may not be enforced in the divorce suit, whereas in the latter situation, the court may enforce the agreement through its contempt powers.

---

[4]As aforenoted, the trial court is without authority to modify its previous orders (here the pendente lite order) retroactively. Cofer, 205 Va. at 839, 140 S.E.2d at 666-67; Taylor, 10 Va. App. at 683, 125 S.E.2d at 865-66.

<u>Rodriguez</u>, 1 Va. App. at 90, 334 S.E.2d at 597. Here, the portion of the PSA containing the support provisions was excluded from the final divorce decree. Furthermore, no order in this record directs husband to comply with the contract support provision. Thus, the support provision constituted a private contract between the parties and "may not be enforced in the divorce suit." <u>Id.</u> <u>McCaw v. McCaw</u>, 12 Va. App. 264, 403 S.E.2d 8 (1991), relied upon by wife, is not contrary to this conclusion. Accordingly, the trial court was without jurisdiction to award a judgment on the portion of the PSA it had not approved or with which it had not ordered husband to comply.

For the reasons stated, the judgment of the trial court is reversed and remanded for such further action as may be warranted that is not inconsistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

- 8 -