COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Overton and Senior Judge Duff
Argued at Alexandria, Virginia


JAMES H. MANVELL
                                        MEMORANDUM OPINION* BY
v.  Record No. 2023-96-4               JUDGE CHARLES H. DUFF
                                            JUNE 10, 1997
KATHLEEN M. MANVELL


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      J. Howe Brown, Judge

        William F. Wall for appellant.

        James A. Watson II (Surovell, Jackson,
        Colten & Dugan, P.C., on brief), for
        appellee.


     James H. Manvell (husband) appeals the decision of the

circuit court classifying as marital property an investment

account titled in husband's name.  Husband contends that an

agreement signed by Kathleen M. Manvell (wife) converted the

account to his separate property.  In the alternative, husband

argues that the account contained funds which he received as an

inheritance from his mother and, thus, over half the account was

traceable as his separate property.  Finally, husband contends

that the trial court erred in dividing the parties' investment

accounts in such a way that husband received the riskier

investments while wife received the more conservative ones.  Wife

appeals the trial court's failure to find waste in husband's

transfer of $56,000 of the parties' funds to the parties' son and

---

        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

withdrawal of $16,500 of the parties' funds, made within days of the parties' separation. Wife also appeals the trial court's denial of attorney's fees. We now affirm.

## Background

The parties were married in 1967 and separated in June 1995 when wife left the marital residence. Husband worked throughout the marriage until he lost his job in 1989. Husband had managed the family's finances throughout the marriage, but became increasingly active in managing the family's investments after 1989. By agreement, wife did not work outside the home for most of the marriage, but she returned to work after husband lost his employment.

The parties experienced increasing marital difficulties beginning in 1990, in part because wife refused to support husband's plan to buy a business. In 1994, husband proposed that he and wife should start separating their finances. On July 14, 1994, wife signed a statement authorizing Paine Webber to "journal all assets and monies in my joint account . . . to an account titled in my husband's name only" and providing "I realize I will be giving up all ownership and control of these assets." Subsequently, on July 21, 1994, both parties signed a statement authorizing Paine Webber to "journal all assets and monies from my joint account . . . to a single account in my husband's name only . . . ," and providing "I realize I will no longer have an interest in the assets held in my husband's name

2

only."  On July 21, 1994, Paine Webber transferred $377,660.20 from the parties' joint account into an account in husband's name.  This money subsequently was transferred to a Smith Barney account and had a balance of $398,220 at the time of trial.

Wife testified that she had little understanding of or access to the investment information and that she trusted husband who told her that this document would make his handling of the investments easier and more "flexible" so he could better support the family.  She did not understand this document to strip her of any claim to the funds.  Wife testified that husband agreed to transfer other assets to wife to "equalize" their holdings, although that never happened.  Husband testified that the parties talked about transferring an account to wife's name.  However, husband also testified that wife knew enough about the funds to know their value and to know that separate title was not necessary to flexibly manage the joint assets.

Husband testified that he received over $88,000 in gifts and inheritance from his mother between 1986 and 1991, which he assumed he deposited into the existing joint investment accounts, although he could not recall specifically which accounts received his inherited funds.

Between May 29 and May 31, 1995, husband transferred $56,000 from the Smith Barney account to the parties' eldest child to equalize money previously spent on the other children.  Husband characterized the payment as one from marital funds.  Husband

3

admitted that the impending separation influenced him to transfer the funds sooner. While wife testified at trial that she objected to the transfer, she indicated that she was concerned by the fact that husband did not consult with her prior to transferring the funds because she wanted to be sure each of their three children received an equal amount.

On June 1 and June 4, 1995, husband wrote checks to himself from joint accounts totalling $16,500, which he lost gambling in Atlantic City.

The trial court ruled that the July 1994 agreement was intended only to change the name on the brokerage firm's records and not to transfer ownership solely to husband. Therefore, funds held in the Smith Barney account remained marital property. The trial court rejected husband's alternative claim that at least half of the Smith Barney account was his separate property inherited from his mother, finding that "there was not sufficient proof of the amount [of inheritance] received, or what happened to the funds after they were commingled with the marital funds . . . ."

In dividing the Smith Barney investments, the court awarded wife the more conservative and stable accounts and husband the high-risk investments. In its order denying husband's motion for reconsideration, the trial court indicated it awarded the high-risk investments to husband because of his greater investment skill.

4

The trial court found that husband's expenditures within days of the parties' final separation were not waste, as they were not made in contemplation of divorce.

### Equitable Distribution

The evidence was received by the trial court <u>ore tenus</u>. "In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one. Accordingly, we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." <u>Artis v. Artis</u>, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). The judgment of a trial court sitting in equity, "when based upon an <u>ore tenus</u> hearing, is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." <u>Simmons v. Simmons</u>, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).

Husband contends that the July 21, 1994 statement signed by wife and husband constituted a valid agreement transferring to him as his separate property the funds held in the Paine Webber account. The trial court ruled the writing did no more than change the title of the account in the records of the investment brokerage firm, but did not convert the marital funds into husband's separate property.

While husband testified that wife clearly knew that the funds were to be his alone, he acknowledged that he had managed the family's finances throughout the marriage, that he had the

greater knowledge and sophistication about the finances in general and the investments in particular, and that wife trusted him. Husband testified that he intended to use the funds in this account now titled only in his name for family purposes:

> I made it very clear to her that that would become my account and I could do anything I wanted with it and that my intentions were to continue to contribute and work it to the benefit of the family to pay the college education and major costs and our mortgage.

> *   *   *   *   *   *   *

> I said that as long as we're working together as family -- like anything else for the benefit of the family. And the itemizations that were mentioned were the major expenses that she could not cover with her salary -- mortgage, college educations, large items. I also informed her I could lose it.

The parties admitted that husband solely controlled the financial transactions. There was evidence that with husband's increasingly more active stock transactions, he had needed to obtain wife's signature more often. Wife testified that she was relinquishing control to increase husband's flexibility in making the stock transactions, but denied that she intended to forego her marital interest to approximately one-half million dollars.

In the alternative, husband contends that he deposited over $88,000 in separate funds inherited from his mother which, with investment earnings over the years, account for over half the value in the Smith Barney account. Separate property includes "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other

6

party."  Code § 20-107.3(A)(1)(ii).  Nevertheless,
[w]hen marital property and separate property
are commingled by contributing one category
of property to another, resulting in the loss
of identity of the contributed property, the
classification of the contributed property
shall be transmuted to the category of
property receiving the contribution.
However, to the extent the contributed
property is retraceable by a preponderance of
the evidence and was not a gift, such
contributed property shall retain its
original classification.

Code § 20-107.3(A)(3)(d).  Husband could not recall into which funds he deposited these amounts and admitted that "at that time I felt it not necessary to segregate" these funds from the parties' marital property.  The trial court found that husband failed to provide sufficient evidence to identify any separate property received from his mother or her estate.  That finding is not clearly wrong.

Finally, husband contends that the trial court violated Code § 20-107.3 because it did not divide the current value of the parties' marital assets but instead relied on husband's future ability to invest the stocks attributed to him.  Code § 20-107.3(C) provides that, "[e]xcept as provided in subsection G, the court shall have no authority to order the division or transfer of separate property or marital property which is not jointly owned."  The account containing the riskier investments was marital property not jointly owned.  Thus, the court lacked authority to order the division of that account.  Working with these limitations, the court's equitable distribution award gave

7

the parties approximately equal shares of the marital assets. The court noted that it considered the tax consequences when reaching its decision. Moreover, while husband complains that he received the riskier investments, the court's decision to award him these investments can hardly be described as an abuse of discretion in light of husband's admittedly greater knowledge and past practice.

Waste

Wife contends that the trial court erred when it failed to find waste in husband's transfer of $56,000 to their son and withdrawal of $16,500 in cash made shortly before she left the marital residence. "'[W]aste' may be generally characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988). The trial court found that the transfers were not made in contemplation of separation. That finding is supported by the evidence. While husband admitted he withdrew the cash and lost it gambling in Atlantic City, there was no evidence that he intended to spend those funds in a way harmful to the marriage or in anticipation of a possible divorce.

Moreover, wife's testimony demonstrated that she did not object to the fact of the transfer to the parties' son, but was concerned whether each of the parties' children received an equal

amount.  Therefore, the evidence indicated that that transfer was not for a purpose unrelated to, or in derogation of, the marriage.

## Attorney's Fees

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).  The trial court noted that, as husband was unemployed while wife was employed, wife had the greater earning potential.  Wife also received a fair share of the marital assets.  We find no abuse of discretion in the court's denial of wife's request for attorney's fees.

Accordingly, the decision of the circuit court is affirmed.

Affirmed.

Fitzpatrick, J., concurring in part and dissenting in part.

I agree with the majority's holdings on all issues except that of the dissipation of marital funds. I respectfully disagree with the majority's conclusion that husband's withdrawal of $16,500 in cash days before the parties' separation was not a dissipation of marital assets.

Parties are "free to spend marital funds" at least until they contemplate divorce. Booth v. Booth, 7 Va. App. 22, 27, 317 S.E.2d 569, 572 (1988). The record establishes that husband acknowledged that the pending separation of the parties was an impetus to the withdrawal of the marital funds. Waste is often "characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Booth, 7 Va. App. at 27, 371 S.E.2d at 571 (emphasis added). Additionally, we have found as follows:

> Dissipation occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose.

Smith v. Smith, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994) (quoting Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990)); see also Alphin v. Alphin, 15 Va. App. 395,

10

403-04, 424 S.E.2d 572, 576 (1992) (no dissipation where party establishes that expenditures were for a proper purpose, e.g., "living expenses, medical bills and other necessities of life").

There are few, if any, clearer ways to squander marital resources than to gamble them away. Specifically, I disagree with the majority's finding that "there was no evidence that [husband] intended to spend those funds in a way harmful to the marriage or in anticipation of a possible divorce." In the instant case, husband knew that the marriage was irrevocably "broken down" at the time he withdrew the marital funds and incurred the gambling debt of $16,500. He knew that the parties' separation was imminent. It is undisputed that the funds at issue were not used in furtherance of a proper purpose or to promote the success of the marital relationship. Thus, I would hold that, following the breakdown of the marital relationship, in gambling away $16,500, husband committed a waste of marital assets.

11