COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Petty and Chafin
Argued at Lexington, Virginia


JACKLYN D. STANLEY

v.      Record No. 1189-16-3

BRISTOL DEPARTMENT OF SOCIAL SERVICES          MEMORANDUM OPINION* BY
                                               JUDGE ROBERT J. HUMPHREYS
JASON M. STANLEY                               MARCH 28, 2017

v.      Record No. 1449-16-3

BRISTOL DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Sage B. Johnson, Judge

Robert L. Black, Jr. (Jim Williams & Associates Attorneys at Law,
LLC, on brief), for appellant Jacklyn D. Stanley.

David Eddy (Law Offices of David Eddy Attorney at Law, PLLC,
on brief), for appellant Jason M. Stanley.

Edward G. Stout (Joshua P. Sutherland, III, Guardian *ad litem* for
the minor children; Holston Legal Group, on briefs), for appellee.


Jason M. Stanley ("Jason" or "father") and Jacklyn D. Stanley ("Jackie" or "mother")

(collectively the "parents") consolidated their respective appeals regarding the May 26, 2016

decision of the Circuit Court of the City of Bristol (the "circuit court") to terminate their

respective residual parental rights of their two children, namely a daughter, P.S., and a son, J.Z.

The parents assert that the circuit court erred when it terminated their respective parental rights

because the Bristol Department of Social Services (BDSS) failed to: (1) prove, by clear and

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

convincing evidence, without good cause, that the parents had been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the children were placed in foster care to remedy substantially the conditions which led to or required continuation of the children's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health, or other rehabilitative agencies to such end, pursuant to Code § 16.1-283(C)(2); (2) prove, by clear and convincing evidence, that it is in the best interests of both children that their respective parental rights be terminated pursuant to Code § 16.1-283[1]; and (3) meet its burden to show that no reasonable alternatives existed to termination.

"When reviewing a termination of a parent's residual parental rights, it would be unfitting to not acknowledge that '[t]he termination of parental rights is a grave, drastic and irreversible action.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 400, 719 S.E.2d 329, 341 (2012) (quoting Helen W. v. Fairfax Cty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991)). For such cases, this Court presumes that the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). Furthermore, "the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). The circuit court has "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. Therefore, in a case

---

[1] Father lengthened his assignment of error to state that it was not possible to remedy the conditions which led to or required continuation of the children's foster care placement since he was not the cause of those conditions or living in the home when the conditions occurred and the mother was making substantial progress for the duration the children were in foster care pursuant to Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 754 S.E.2d 922 (2014).

involving termination of parental rights, the circuit court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Eaton v. Wash. Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659). Thus, this Court will not reverse the circuit court's judgment terminating the mother's and the father's parental rights unless the evidence, viewed in the light most favorable to BDSS, was insufficient to support it.

Code § 16.1-283(C) states in pertinent part:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship . . . ; or
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Pursuant to Code § 16.1-283(C) the "trial judge must make two separate inquiries in order to terminate parental rights." Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 579, 625 S.E.2d 670, 673 (2006). The court must find that BDSS has "met its burden of proving, by clear and convincing evidence: (1) that termination is in the best interests of the child; and (2) that the parent has not maintained a relationship with the child or remedied the conditions that led to foster care placement." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 46, 764 S.E.2d 284, 290 (2014). "This statutory scheme is designed to protect the rights for the parents and their child and must be strictly followed before the courts are permitted to sever the natural bond between parent and child." Thach v. Arlington Cty. Dep't of Human Services, 63 Va. App. 157, 169, 754 S.E.2d 922, 928 (2014) (quoting Layne v. Layne, 61 Va. App. 32, 36-37, 733 S.E.2d 139, 140 (2012)). Because the appellants' first and second assignments of error simply separate the two-prong test that is required by Code § 16.1-283(C), we will consider those assignments of error together.

"The first prong of [Code § 16.1-283(C)] is to determine the child's best interests." Id. "[T]here is no simple, mechanical, 'cut and dried' way" to apply the best interests of the child standard. Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988). Instead, "the question must be resolved . . . in light of the facts of each case." Welch, 64 Va. App. at 48, 764 S.E.2d at 291.

> In determining what is in the best interests of the child, the circuit court must evaluate and consider many factors: the age and physical and mental condition of the child; the age and physical and mental condition of the parent; the relationship existing between the parent and the child; the needs of the child; the role the parent has played, and will play in the future, in the upbringing and care of the child; and any other such factors that are necessary.

Thach, 63 Va. App. at 169, 754 S.E.2d at 928.

In this case, the mother argues that the circuit court limited its analysis of the children's best interest to the "special needs" of "the children and the mother's inability to meet those needs." The mother believes the circuit court erred because it was impressed with the testimony of Dr. Erin Jurich-Finney ("Dr. Jurich-Finney), a clinical psychologist, regarding J.Z. and neglected to provide any analysis with respect to the remaining factors. The mother argues that in reviewing all of the enumerated factors, the evidence introduced at trial was insufficient as a matter of law to prove by clear and convincing evidence that termination was in the best interest of each child.

The mother solely highlights the evidence most favorable to her cause. First, she points to statements made by Linda Comer ("Comer"), a licensed professional counselor. Comer testified as an expert in parental counselling and stated that the visits between the mother and her children went well and any small issues were handled appropriately. Additionally, during visits, Comer did not have any concerns about the mother managing the children. Next, the mother points to the notes of Dr. Wayne Lanthorn ("Dr. Lanthorn"), a clinical psychologist. Specifically, the mother highlights that Dr. Lanthorn wrote, "in the examiner's opinion, no strong clinical evidence was found that would lead to discouraging the [circuit c]ourt or the [BDSS] from not retuning her two younger children to her care."

However, the mother completely ignores Dr. Jurich-Finney's testimony. First, Dr. Jurich-Finney testified that the mother's attendance at the family therapy meetings was sporadic. Then, after the mother gave birth to another child not involved in this case, J.Z. was not happy and the mother was less regular in coming to the appointments. Dr. Jurich-Finney stated that the mother's demeanor and appearance were different each time. Sometimes she was well dressed, fully present, and able to connect. On other days, she seemed lost. Specifically, Dr. Jurich-Finney testified that the mother had difficulty reinforcing boundaries in an appropriate

way so that J.Z. could see that there were rules and they had to be followed. Dr. Jurich-Finney characterized the relationship as sometimes being parent-child, but "on her less together days it was more like a sibling relationship." Finally, Dr. Jurich-Finney expressed that J.Z.'s individual therapy was being derailed by the family therapy. The mother's last visit was on August 26, 2015. As a result of these problems, Dr. Jurich-Finney recommended that the visits cease in October 2015. Dr. Jurich-Finney believed that J.Z. desperately needed permanency in his life, and stability to deal with his meltdowns and his diagnosis of ADHD.

Meanwhile, the father argues that he was not there and pursuant to Thach his rights should not have been terminated. However, his reliance on Thach is misplaced. In Thach, the mother was found to have neglected the child because she abused substances. Mendoza, the father, was unaware of the situation and the Arlington County Department of Human Services delayed offering Mendoza services. The reason this Court found in favor of Mendoza was because "[a]t the time of the circuit court's judgment, the record is clear that Mendoza had completed, or was participating in, the services recommended by DHS, he was providing a satisfactory home for [the] younger brother, and the neglectful parent had been removed from the equation." Thach, 63 Va. App. at 173, 754 S.E.2d at 930. Here, the father was completely absent for over a year, only showing up when the circuit court hearing was scheduled.

The circuit court relied on Crawley when it made its determination regarding the children's best interest. Crawley states that, "[i]n each subsection of [Code § 16.1-283], the child's best interest is the threshold test. . . . Thus, we have held that, when considering a termination of parental rights, the child's best interest is the paramount concern." Crawley, 47 Va. App. at 579, 625 S.E.2d at 673. In its May 26, 2016 opinion letter, the circuit court discussed the mother's inability to meet the children's special needs and the children's necessity for permanency, particularly critical to J.Z. The circuit court was

- 6 -

particularly impressed by the testimony of Dr. Erin Jurich-Finney, who had been working with [J.Z.] since June, 2014.  She testified to [J.Z.'s] needs, the mother's inability to meet those needs, and the necessity for permanency particularly critical to [J.Z.].  While all children thrive with permanency, it was quite clear to the [circuit c]ourt that it was a particularly relevant factor as it related to both [children], because of their special needs.  Therefore, the [circuit c]ourt finds, based upon the facts and evidence presented, that the mother has not "substantially remedied the conditions" that led to the emergency removal and that the "best interests" of the children require termination of the residual parental rights of the mother.

Given that the best interests of the child analysis is highly fact-sensitive and discretionary, overturning the circuit court's decision in this case would necessarily require this Court to improperly substitute its judgment for that of the circuit court.  See Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).  "There simply is no bright line standard that this Court can apply to conclude that as a matter of law, the circuit court erred in determining that termination was not in the best interests of the child.  Instead, we must presume that the circuit court made its determination based on the best interests of the child."  Welch, 64 Va. App. at 49, 764 S.E.2d at 292.  Here, because the circuit court relied on appropriate factors and pointed to some evidence supporting its decision, we hold that the circuit court's best interests' determination was not plainly wrong or without evidence to support it.

Regarding the second inquiry that a circuit court must make in order to terminate parental rights, that the parent has not maintained a relationship with the child or remedied the conditions that led to foster care placement, the circuit court based its decision to terminate the mother's parental rights to J.Z. and P.S. on Code § 16.1-283(C)(2).  The statute contemplates that efforts to resolve the "conditions" relevant to termination are constrained by time.  Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 754 S.E.2d 890, 894 (2001).  "[The] twelve-month time limit was designed to prevent an indeterminate state of foster care drift and to encourage timeliness by the courts and social services in addressing the circumstances that

resulted in the foster care placement." Thach, 63 Va. App. at 171, 754 S.E.2d at 929 (quoting L.G. v. Amherst Cnty. Dep't Soc. Servs., 41 Va. App 51, 56, 581 S.E.2d 886, 889-90 (2003)).

The mother argues that the twelve-month period for which Code 16.1-283(C)(2) describes ended on December 11, 2014 because BDSS removed the children from her custody on December 11, 2013 and placed them into foster care. According to the mother, she had substantially remedied the conditions that led to the children's placement in foster care by December 11, 2014 and the circuit court improperly limited its consideration of evidence to the time period between December 2013 and June 2015 during the March 7, 2016 parental termination hearing. The mother contends the circuit court failed to consider the new situation as of the hearing date: (1) that she now had a home with her boyfriend, Mark Brent ("Brent"), and he was willing to allow J.Z. and P.S. to reside with them; (2) Brent had all the necessary furniture for the children to reside in the home; (3) the paranoia she displayed directly after the birth of her youngest daughter in June 2015 was pretty much gone; and (4) she stressed that as of the hearing date she was back to taking her medication. However, there is no evidence other than her testimony that any of these new factors existed. Additionally, the record reflects that the mother had previously told a BDSS employee that Brent was mentally abusive to her, he was an alcoholic, made fun of her mental disability, and that it had only gotten worse since her youngest daughter was born.

We note that "[t]he fundamental liberty interest of natural parents in the care, custody and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody . . . to the State." Crawley, 47 Va. App. at 581, 625 S.E.2d at 674 (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)). "If there is reason to believe that positive, nurturing parent-child relationships exist, the [state's] *parens patriae* interest favors preservation, not severance, of natural familial bonds." Thach, 63 Va. App. at

173, 754 S.E.2d at 930. "[T]he factfinder may consider evidence before or after the twelve-month time period in order to evaluate the *present* best interest of the child." Id. at 171, 754 S.E.2d at 929. "The circuit court may discount the parent's current progress if the best interests of the child would be served by termination, or it may determine that a parent's delayed, but nonetheless substantial, progress may overcome the time delay." Id.

Here, the circuit court found by clear and convincing evidence that the mother has a significant mental health impairment, which "requires stable and constant medication." It acknowledged that during short periods of time from the emergency removal on December 11, 2013 until June 2015, the mother was relatively stable. However, the circuit court found that it was clear the mother had failed to stabilize either her mental health condition or living arrangements to the point that it would not be in the children's best interests to return home. The mother was provided more than the time required by Code § 16.1-283(C)(2) to remedy substantially her situation. Because the circuit court relied on appropriate factors and pointed to some evidence supporting its decision, we hold that the circuit court's decision was not plainly wrong or without evidence to support it.

The circuit court based its decision to terminate the father's parental rights to J.Z. and P.S. on Code § 16.1-283(C)(1). However, the father assigned error to a finding that the circuit court erred in terminating his rights based on Code § 16.1-283(C)(2). Recently, our Supreme Court highlighted the importance of an appellant's framing of its assignment of error.

> An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal. Assignments of error are the *core* of the appeal. With the assignment of error, an appellant should "lay his finger" on the alleged misjudgment of the court below. Martin P. Burks, Common Law and Statutory Pleading and Practice § 425, at 827 (T. Munford Boyd ed., 4th ed. 1952). A properly aimed assignment of error must "point out" the targeted error and not simply take "a shot into the flock" of issues that cluster around the litigation. Plant Lipford, Inc. v. E.W. Gates & Son Co., 141 Va.

325, 332, 127 S.E. 183, 185 (1925) (citations omitted). "An assignment of errors is in the nature of a pleading, and in the court of last resort it performs the same office as a declaration or complaint in a court of original jurisdiction." Puckett v. Commonwealth, 134 Va. 574, 579, 113 S.E. 853, 854 (1922) (citation omitted). Like a well-crafted pleading, assignments of error set analytical boundaries for the arguments on appeal, provide a contextual backdrop for our ultimate ruling, and demark the stare decisis border between holdings and dicta.

Forest Lakes Cmty. Ass'n v. United Land Corp. of Am., ___ Va. ___, ___, 795 S.E.2d 875, ___ (2017). Additionally, "[i]t is well-settled that a party who challenges the ruling of a lower court must on appeal assign error to each articulated basis for that ruling." Ferguson v. Stokes, 287 Va. 446, 452, 756 S.E.2d 455, 458 (2014) (quoting Manchester Oaks Homeowners Ass'n v. Batt, 284 Va. 409, 421, 732 S.E.2d 690, 698 (2012)). Thus, because the father failed to assign error to the legal basis for the ruling of the lower court, this Court cannot review the matter and the father's argument is waived. See id.

Yet, assuming without deciding that father had properly assigned error, there is clear and convincing evidence in the record to support the finding of the circuit court that the father, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care, notwithstanding the reasonable and appropriate efforts of the agencies. The children were removed from the mother's care December 11, 2013. The father was found and contacted in January 2014. The father was included on the foster care plans and met with the children from January 2014 until September 2014. However, after September 5, 2014, the father did not maintain contact with the children or the agency. He never visited for over a year. The record disclosed that there were ample services offered and available to the father, but he chose not to take advantage of them. "The law does not require the division to force its services upon an unwilling or disinterested parent." Barkey v. Commonwealth, Alexandria Dep't of Human

Servs., 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986). Therefore, we hold that the circuit court did not err in terminating the father's rights pursuant to Code § 16.1-283(C)(1).

Finally, the parents argue that the circuit court erred because BDSS failed to meet its burden to show that no reasonable alternatives existed to termination, especially relative placement. Specifically, the parents argue that each of the grandmothers had previously petitioned for custody of the children and that BDSS did not provide any evidence with respect to an alternative placement except to say that the grandmothers had filed petitions which were later withdrawn.

Code § 16.1-283(A) provides, in pertinent part, that before terminating parental rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." "We have interpreted this provision to require DSS to consider all 'reasonable options for placement with immediate relatives' as a prerequisite to a parental termination decision." Bagley v. City of Richmond Dep't of Soc. Servs., 59 Va. App. 522, 524, 721 S.E.2d 21, 22 (2012) (quoting Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 136, 531 S.E.2d 639, 642 (2000)). However, considering all reasonable options for placement with immediate relatives does not create an affirmative duty on BDSS to investigate the home of every relative of the children, however remote, as a potential placement." Sauer v. Franklin Cty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 642 (1994).

We conclude that while the circuit court did not address this issue explicitly in its order, it clearly implicitly gave sufficient consideration to granting custody to relatives of the child. First, the record reflects that BDSS sent out a relatives search inquiry and not one person responded. Additionally, the circuit court stated that the mother's mother "was not an appropriate placement because she hasn't gone through the process. She withdrew her petition. And she hasn't been investigated. She hasn't been identified." The circuit court further stated that it did not think she

was an appropriate placement "because the Department of Social Services hasn't gone through that investigative process because [Ms. Jackson] withdrew her petition for custody." As such, we hold that the circuit court did not err. Therefore, we affirm the circuit court's decision to terminate the respective residual parental rights of both the father and the mother.

Affirmed.