COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Kelsey and Alston
Argued at Richmond, Virginia

KATRINA BAGLEY

                                                      OPINION BY
v.        Record No. 1251-11-2              JUDGE D. ARTHUR KELSEY
                                                      JANUARY 31, 2012
CITY OF RICHMOND DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

        Charles R. Samuels (Charles R. Samuels, PLLC, on briefs), for
        appellant.

        Ramona L. Taylor, Assistant City Attorney (Robert D.
        Shrader, Jr., Guardian *ad litem* for the minor child; Office of the
        City Attorney; Steingold and Shrader, PLC, on brief), for
        appellee.


Pursuant to Code § 16.1-283, the trial court terminated the parental rights of Katrina

Bagley concerning her infant child.  On appeal, Bagley does not contest the factual grounds

supporting the court's termination decision.  Instead, she argues the termination order should be

vacated because the Richmond Department of Social Services (DSS) failed to consider granting

custody of the child to Ralph and Patricia Davis — a couple Bagley claims to be the child's

relatives.  We disagree and affirm.

Code § 16.1-283(A) states that a termination order should be "accompanied" by an order

granting custody of the child to either DSS or some specific individual.  When entering the

custody order, however, "the court shall give a consideration to granting custody to relatives of

the child, including grandparents."  Code § 16.1-283(A).  We have interpreted this provision to

require DSS to consider all "reasonable options for placement with immediate relatives" as a

prerequisite to a parental termination decision. Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 136, 531 S.E.2d 639, 642 (2000) (quoting Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994) (clarifying that DSS does not have a "duty in every case to investigate the home of every relative of the children, however remote, as a potential placement")).

On appeal, Bagley argues the trial court erred by terminating her parental rights because DSS failed to consider granting custody of her child to the Davises. In response, DSS argues the Davises are not relatives and, in any event, DSS did consider placing the child with them and concluded it would be ill-advised to do so.[1] We need not address the adequacy of DSS's investigation because we hold the Davises are not relatives of the child as a matter of law.

When a statute uses words having an established common law meaning, courts presume the legislature intended that meaning unless the statute clearly suggests otherwise. Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2245 (2011). When a Virginia statute "employs a word or phrase which has already been used in the common law or in another statute, and has there acquired by construction an established meaning, it is to be understood in the meaning previously determined." Houston v. Commonwealth, 87 Va. 257, 262, 12 S.E. 385, 386 (1890). This canon of construction presumes the legislature "knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the

---

[1] During closing arguments, the trial court commented, "they're not related, as I understood it." App. at 109. After hearing additional argument, the trial court ruled: "I find that Katrina Bagley's parental rights should be terminated, that that's in the best interest of the child. The Department has made its case by clear and convincing evidence." Id. at 113. The court's final order does not expressly address the question whether the Davises are relatives of the child. This omission does not affect our analysis. Under settled principles, "[a]bsent clear evidence to the contrary in the record, the judgment of a circuit court comes to an appellate court with a presumption that the law was correctly applied to the facts." Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (citation omitted).

meaning its use will convey to the judicial mind unless otherwise instructed." Beck v. Prupis, 529 U.S. 494, 501 (2000) (quoting Morissette v. United States, 342 U.S. 246, 263 (1952)).[2]

Under common law, a *relative* means someone related by consanguinity or affinity. Consanguinity is a "relation by blood," Doyle v. Commonwealth, 100 Va. 808, 811, 40 S.E. 925, 926 (1902) (citation omitted), between those sharing "a common ancestor," Surles v. Mayer, 48 Va. App. 146, 163 n.5, 628 S.E.2d 563, 571 n.5 (2006) (citation omitted). Affinity, on the other hand, "is the relation of one spouse to the other spouse's kindred." Brooks v. Commonwealth, 41 Va. App. 454, 460, 585 S.E.2d 852, 855 (2003). To this common law definition of relative, Virginia statutes add children legally adopted.[3]

In the trial court, Bagley claimed that her brother was the boyfriend of the Davises' daughter. Whether true or not, this tenuous connection does not make the Davises *relatives* of Bagley's child. They share no common ancestor and, thus, are not related by blood — a point Bagley conceded at trial. See App. at 108. Nor are they related by marriage or adoption. Lacking any relationship by consanguinity, affinity, or adoption with Bagley's child, the Davises cannot be the child's "relatives" under Code § 16.1-283(A) and, all the more, cannot qualify as

---

[2] "The interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter." 2B Sutherland, Statutes and Statutory Construction § 50:3, at 176 (Norman J. Singer ed., 7th ed. 2008). "Although a statute may define the way in which a particular word is used, the common-law background and origin of the word may be useful to a proper understanding of the statute in cases of reasonable doubt." Id. at 179.

[3] An adopted child shall be, "to all intents and purposes, the child of the person or persons so adopting him," and "shall be entitled to all the rights and privileges, and subject to all the obligations, of a child of such person or persons born in lawful wedlock." Code § 63.2-1215. Virginia statutes regularly use this statutorily enhanced common law definition of relative. See Code § 8.01-53 ("For purposes of this section, a relative is any person related to the decedent by blood, marriage, or adoption . . . ."); see also Code §§ 15.2-2291; 15.2-2292; 15.2-2292.1; 16.1-336; 16.1-350; 16.1-355; 32.1-102.3:2; 38.2-3544; 63.2-2200 (all referencing persons related "by blood, marriage, or adoption").

"immediate relatives" under our interpretation of the statute in <u>Hawthorne</u> and <u>Sauer</u>.[4]  The trial court, therefore, did not err in rejecting DSS's petition for termination on the ground that DSS failed to comply with Code § 16.1-283(A).

<u>Affirmed.</u>

---

[4] At oral argument on appeal, Bagley pointed out that her brother and the Davises' daughter share a child in common.  <u>See</u> Oral Argument Audio 3:15-3:50, 5:40, 25:26.  This fact, however, has no logical or legal relevance to the question whether Bagley's child is legally related to the Davises.  "We must be careful to remember," the essential characteristic of blood relatives, direct or collateral, "consists in this descent from one and the same common ancestor." 2 William Blackstone, <u>Commentaries</u> *644.  This case would be no different, even if the Davises' daughter and Bagley's brother were legally married.  Centuries-old common law holds "the *consanguinei* of the husband are not at all related to the *consanguinei* of the wife."  1 William Blackstone, <u>Commentaries</u> *435 n.5 (Edward Christian ed. 1793).