COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Athey
Argued at Lexington, Virginia


CHRISTOPHER PILENZA

v.        Record No. 2030-18-3

NELSON COUNTY DEPARTMENT OF
 SOCIAL SERVICES

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
MARCH 17, 2020

FROM THE CIRCUIT COURT OF NELSON COUNTY
Michael T. Garrett, Judge

Brady S. Nicks for appellant.

P. Scott De Bruin; Herbert E. Taylor, III, Guardian *ad litem* for the
minor child (The Law Offices of Herbert E. Taylor, III, PLLC, on
brief), for appellee.[1]


Christopher Pilenza ("Pilenza") and Carrie Pilenza ("mother") are spouses and parents of

C.P.,[2] born December 18, 2016. They separately appeal[3] a determination by the Circuit Court of

Nelson County ("circuit court") terminating their parental rights and placing C.P. with Nelson

County Department of Social Services ("NCDSS").

---

[1] Pursuant to Rule 5A:19(d), the guardian *ad litem* filed a notice relying on appellee's
brief and argued in support of appellee's position.

[2] To protect the child's privacy, we use her initials rather than her name. Additionally,
the record in this case was sealed. In order to appropriately address the assignments of error
Pilenza raises, this opinion includes portions of the record that were sealed. "To the extent that
this opinion mentions facts found in the sealed record, we unseal only those specific facts,
finding them relevant to the decision in this case. The remainder of the previously sealed record
remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[3] This is a companion case to Carrie Pilenza v. Nelson Cty. Dep't of Soc. Servs., No.
0034-19-3 (Va. Ct. App. Mar. 17, 2020), also decided this day.

On appeal, Pilenza's first assignment of error states:

> A [circuit] court must give consideration to granting custody to relatives of a child prior to terminating parental rights. A relative means a person related by consanguinity or affinity. Consanguinity is a "relation by blood." The [circuit] court mistakenly construed the term "relative" when it excluded from the definition appellant's blood cousin.

NCDSS responded by arguing that Pilenza's biological cousin is not a relative under the statute. The agency reasoned that because Pilenza had been adopted, any legal relationship with his biological cousin had been severed. We agree with that argument, and thus affirm. [4]

## I. BACKGROUND

On June 7, 2017, C.P. came into the care and custody of NCDSS pursuant to an emergency removal petition. On February 20, 2018, NCDSS sought to terminate the residual parental rights of Pilenza and mother. Mother had been hospitalized for mental illness, and Pilenza had been incarcerated for eluding police and endangering the life of C.P., who was in the vehicle Pilenza was driving when he was arrested for eluding the police.

The Nelson County Juvenile and Domestic Relations District Court ("JDR court") heard the matter on August 27, 2018. Because both Pilenza and mother were absent, the JDR court adjudicated C.P. as abused or neglected and indicated that its finding was based upon C.P. being "without parental care or guardianship caused by the unreasonable absence or the mental or physical incapacity of the child's parent, guardian, legal custodian or other person standing *in loco parentis*." Pursuant to the JDR court's order, C.P. remained in the care of NCDSS until ultimately being placed with a foster care family.

---

[4] Pilenza's second and third assignments of error are both premised on the assumption that his cousin is a legal relative. Because of our conclusion to the contrary, we need not address these assignments of error.

With Pilenza's approval, his biological cousin, Jonathon Cejmer ("Cejmer") subsequently filed for custody of C.P. in the JDR court.[5]  In describing his relationship with Cejmer, Pilenza testified at the *de novo* hearing in the circuit court that Pilenza had been adopted and that Cejmer is not his cousin through that adoption but rather is his biological cousin.  NCDSS investigated Cejmer as a placement option, but Cejmer withdrew his petition before the hearing in the circuit court.

At the conclusion of the hearing, the circuit court terminated the residual parental rights of Pilenza and mother.[6]  The circuit court also held that Cejmer was not a relative within the meaning of Code § 63.2-1215 because when Pilenza was adopted, his relationship as a relative to Cejmer was terminated and his adoptive family became his relatives for purposes of Code § 63.2-1215.

## II.  ANALYSIS

Initially, Pilenza contends that "[t]he [circuit] court mistakenly construed the term 'relative' when it excluded from th[at] definition appellant's blood cousin."

Whether a person is a relative pursuant to Code § 63.2-1215 is a question of law that this Court reviews *de novo*.  Rudolph v. City of Newport News Dep't of Human Servs., 67 Va. App. 140, 145 (2016).

Pursuant to Code § 16.1-283(A), a termination order must be "accompanied" by an order granting custody of the child to the agency or to a specific individual.  Bagley v. City of Richmond Dep't of Soc. Servs., 59 Va. App. 522, 524 (2012).  In granting custody, however, the circuit court "shall give . . . consideration to granting custody to *relatives* of the child, including

---

[5] Cejmer is misspelled as "Cejner" in the transcript.

[6] Because Pilenza does not contest the grounds supporting the trial court's termination decision, it is unnecessary to discuss the reasons the trial court cited for terminating his parental rights.

grandparents."[7]  Code § 16.1-283(A) (emphasis added).  This Court has interpreted this provision to require agency consideration of all "'reasonable options for placement with immediate relatives' as a prerequisite to a parental termination decision."  Bagley, 59 Va. App. at 524 (quoting Hawthorne v. Smyth Cty. Dep't of Soc. Servs., 33 Va. App. 130, 136 (2000)).

A relative is a person related by consanguinity or affinity.  Id.  Consanguinity describes a blood relation between persons sharing a common ancestor.  Id.  The blood relation, however, ends upon the finalization of an adoption because the General Assembly intended that result through enacting Code § 63.2-1215.  See Kummer v. Donak, 282 Va. 301, 306 (2011) (explaining that "consanguinity ceases to be paramount where the legislature expresses an intention to the contrary").

Code § 63.2-1215 states that

> any person who has an interest in the child that derives from or through the birth parent or previous adopted parent, including but not limited to grandparents, step-parents, former step-parents, blood relatives and family members shall, by final order of adoption, be divested of all legal rights and obligations in respects to the child including the rights to petition any court for visitation with the child.

Thus, pursuant to Code § 63.2-1215, a person's "blood connection" and status as a "relative" ceases to exist once that person is adopted.

Applying these principles here shows that Cejmer is not a "relative" of C.P. within the meaning of the statute.  Although a circuit court, by statute, must consider granting custody to relatives of a child when ordering the termination of parental rights—and the agency must consider reasonable placement with immediate relatives—a person is no longer a relative of his or her biological family once his or her adoption is finalized.

---

[7] We note that the statute was amended effective July 1, 2019; the new language states that the circuit court "shall give a consideration to granting custody to a person with a legitimate interest."

It is undisputed here that Pilenza was adopted. In fact, Pilenza admitted that he had been adopted and that Cejmer was not his cousin through adoption. Cejmer is, therefore, Pilenza's biological cousin, and their blood connection within the meaning of the statute ceased to exist once Pilenza's adoption was finalized. Because the Virginia General Assembly decided that adoption should sever the connection, Cejmer and Pilenza are no longer relatives even though they share a common ancestor by blood.

Because any alleged connection between Cejmer and C.P. would derive from Pilenza—whose legal connection to his biological family, including Cejmer, was severed by adoption—C.P., later born to Pilenza, is not a relative of Cejmer within the meaning of the statute.[8] Thus, the circuit court did not err in finding that C.P. was not a relative of Cejmer.

### III. CONCLUSION

For these reasons, we affirm the trial court's judgment.

<u>Affirmed.</u>

---

[8] We additionally note that Cejmer withdrew his petition to foster C.P. before the circuit court heard this matter.