COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, White and Frucci

UNPUBLISHED

BRADLEY ALLEN ROLOSON

                                           MEMORANDUM OPINION*

v.      Record No. 1157-23-3                        PER CURIAM
                                                     JULY 9, 2024

CARROLL COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF CARROLL COUNTY
Brett L. Geisler, Judge

(R. Christopher Munique; Lacy, Campbell & Munique, PC, on
brief), for appellant. Appellant submitting on brief.

(Katie M. DeCoster; Joey D. Haynes, Guardian ad litem for the
minor children; Sands Anderson, PC; The Jackson Law Group
PLLC, on brief), for appellee.

Bradley Roloson ("father") appeals the orders of the Circuit Court of Carroll County

("circuit court") terminating his parental rights to his minor children, S.R. and M.R., under Code

§ 16.1-283(B), 16.1-283(C)(1)-(2), and 16.1-283(E) and granting the petitions of the Carroll County

Department of Social Services (the "Department"). On appeal, father first assigns error to the

circuit court's finding that the evidence adduced at the *ore tenus* hearing was sufficient to establish

that it was in the best interests of S.R. and M.R. to change their foster care plan goal from "return

home/relative placement" to adoption. Father also challenges the sufficiency of the evidence in

support of the circuit court's termination of his parental rights. After examining the briefs and

record in this case, the panel unanimously holds that oral argument is unnecessary because "the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). Finding no error, we affirm the circuit court's judgment.

## I. BACKGROUND[1]

S.R.[2] and M.R. were removed from the custody of their parents and administratively placed in foster care on November 25, 2020, after their parents were arrested. Their father was charged with and subsequently convicted of multiple counts of possession of child pornography, aggravated sexual battery, reproduction of child pornography, and object sexual penetration involving his older child, S.R. The children's mother was also charged with and convicted of similar offenses.[3] As a result of these charges, father had been incarcerated since the children were first placed in foster care, thereby barring him from receiving any of the normal parenting services usually offered by the Department or from participating in the children's foster care plans. And, because of his sentences, father was excluded from being considered as a final placement option for the children.

While the parents' criminal proceedings progressed, the Department identified some potential relative placements. One potential placement was the children's paternal uncle, Robert Warner ("uncle"). Another potential relative placement identified by the Department was the

---

[1] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). The record in this case was also sealed. Hence "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Brandon v. Coffey*, 77 Va. App. 628, 632 n.2 (2023) (quoting *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017)).

[2] We use initials to refer to the minor children to preserve their privacy.

[3] The children's mother was charged and convicted of two counts of inanimate object sexual penetration committed against S.R. in connection with father's conduct and was sentenced to life in prison on both counts. Mother agreed to voluntarily terminate her residual parental rights to the children on March 31, 2023.

children's paternal great grandmother, Shirley DeHaven ("great grandmother").[4]  The

Department offered these relatives services and training to both prepare them and further

evaluate them for a potential placement.

Uncle and great grandmother then had "very limited contact with the Department,"

causing the Department to document these relatives "fail[ing] to attend training as requested to

become an approved provider to be considered for placement."  The Department also noted that

"[t]here are significant concerns with each of these petitioners as they each have expressed they

d[id] not feel [father] . . . perpetrated any abuse against [S.R.] and that he was not involved with

child pornography."  The Department further documented that both uncle and great grandmother

"indicated that [they believed] [father] was set up and falsely accused."  The Department also

documented that when it "had contact with . . . [great grandmother][,] their conversations [we]re

not constructive discussions," and although the Department noted that uncle did not "exhibit[]

this type of communication," uncle also lived with great grandmother, "rais[ing] a[n] [additional]

concern."

As a result, on July 13, 2021, the Department filed a foster care plan[5] ("plan") form

pertaining to S.R., recommending adoption instead of relative placement as the final goal for

---

[4] Vicky Phillips ("Phillips") was also identified as another potential relative placement but her relationship to the children is unclear from the record.  The Department did provide Phillips services in vetting her as a potential placement, but later deemed her progress unsatisfactory.  Phillips petitioned for custody of the children but did not testify or provide any evidence in support.  As a result, her petitions were dismissed by the circuit court with prejudice.

[5] There appears to be a discrepancy in the record pertaining to when the plan was actually prepared as the Part A of the plan notes that it was prepared on July 13, 2021, while the Part B notes that it was prepared a year earlier.  We find from reviewing the record, particularly that the signature page for the plan provides that it was signed on July 13, 2021, that this discrepancy is a scrivener's error and has no bearing on our reasoning in this case. *Morgan v. Russrand Triangle Assocs., Inc.*, 270 Va. 21, 25 (2005) ("Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes." (quoting *Wellmore Coal Corp. v. Harman Mining Corp.*, 264 Va. 279, 283 (2002))).

both children. The Department noted in the plan that it "evaluated placement with each of the maternal and paternal petitioners, but there are concerns with each of them as documented in detail throughout the service plan." The Department concluded that "due to these issues the Department does not feel that any petitioner is a viable placement option for the children and does not feel that transfer of custody to any of them should be considered." The Department also noted that the children could not practicably visit with extended family members due to severe trauma-related symptoms. For example, the Department noted that S.R. exhibited a trauma response triggered by simply mentioning her relatives. Thus, the Department recommended that the children's plan goal needed to be changed to adoption since no relative was approved for placement. The Department then filed petitions in the Carroll County Juvenile and Domestic Relations District Court ("JDR court") to both approve the proposed amended plan for each child and to terminate father's parental rights.

On October 27, 2021, following a hearing held in the JDR court, the Department's petitions were granted, amending the plan's goal to adoption and terminating the father's parental rights to both children. Father timely appealed that decision to the circuit court which subsequently conducted an *ore tenus* hearing on the Department's petitions on March 31, 2023. In addition, both uncle and great grandmother filed separate petitions seeking custody of the children which were also heard *ore tenus* in the circuit court along with the petitions filed by the Department.

During the October 27, 2021 hearing, the Department called their caseworker, Sheree Moore ("Moore"), who testified with respect to the previously mentioned difficulties the Department experienced with both uncle and great grandmother while attempting to provide them services. Moore further testified that while the children were in foster care, S.R. received extensive health counseling and mental health services to assist her in dealing with the traumatic

- 4 -

effects of the sexual abuse and criminal neglect she suffered at the hands of her father and mother. As result, based on her experience working with both children, Moore was of the opinion that further familial involvement with the children was counterproductive to their recovery and thus inadvisable. She explained that S.R. still exhibited immense distress and fear when even discussing her parents and that this fear and distress also extended to her relatives, including uncle and great grandmother. In reaching her opinion, Moore testified that the Department also relied upon the recommendations of a licensed professional counselor, Angie Slate ("Slate"), who had provided counseling services for S.R.

Slate testified that the Department had previously consulted her to determine whether S.R.'s mental health condition resulting from the sexual abuse could tolerate visits with her relatives or parents. She further testified that the Department regularly checked with her for updated recommendations based on the child's current mental health prognosis and that she had begun counseling S.R. in January 2021. She also provided that S.R. had been documented exhibiting extremely negative reactions towards her family consistent with the significant trauma she suffered from the severe and repeated sexual abuse and neglect she had suffered while in their care. As a result, in her professional opinion, neither S.R. nor M.R. should have any contact with family members to avoid traumatizing S.R. since any resulting trauma could cause S.R.'s condition to regress. Slate also opined that placing the children with either uncle or great grandmother would be particularly damaging since neither uncle nor great grandmother believed that father had abused S.R.

After the Department presented its evidence, uncle testified in support of his custody petitions.[6] Uncle detailed that he is currently employed and that he used to spend time with S.R. and help her with her homework. Uncle also testified that he believed that he substantially complied with the Department's requirements. He further qualified that he had attempted to engage in counseling, but he had been unable to locate a counselor in the time period the Department requested. Uncle admitted to delaying the Department for approximately six months before he completed the necessary paperwork to start the trauma care classes the Department had recommended. Additionally, he also confirmed that there had been breaks in his communication with the Department and that he failed to regularly contact the children's guardian ad litem. When pressed on cross-examination to explain why he did not attend father's criminal trial, he stated he had not attended for "personal reasons." Uncle further testified that he does not know if father sexually abused the children, but he did believe that the children had suffered trauma. Finally, uncle stated that if he were given custody by the circuit court, he would prevent father from having future contact with the children.

The children's guardian ad litem then submitted her recommendation that the father's residual parental rights be terminated and that both the uncle and great grandmother's custody petitions be denied as well. The circuit court also took judicial notice that on March 17, 2023, father was convicted of committing object sexual penetration against S.R.

Following closing argument, the circuit court granted the Department's petitions involuntarily terminating father's parental rights and changing the plan's goal to adoption. The circuit court also dismissed uncle and great grandmother's custody petitions with prejudice. In

---

[6] Uncle also noted that great grandmother supported his custody petitions. Great grandmother had offered no evidence in support of her own petitions and stated that she was not seeking custody to be awarded to her. She instead indicated that she lives with uncle and would be able to help him with the girls if he were granted custody.

support of its decision, the circuit court found that it was in the children's best interests to terminate father's parental rights under several code sections. *See* Code § 16.1-283(B), 16.1-283(C)(1)-(2), 16.1-283(E). The circuit court also found in denying uncle's petitions for custody that he "did not carry his burden of proof in establishing that transferring custody of the children to him would be in their best interests, nor did he offer evidence to establish the necessary statutory factors." The circuit court then entered a final order per its findings on June 8, 2023. Father appealed.

## II. ANALYSIS

### A. *Standard of Review*

"'On review of a [circuit] court's decision regarding the termination of parental rights, we presume the [circuit] court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 266 (2005) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)).

B. *The circuit court did not abuse its discretion in granting the Department's petitions to terminate father's residual parental rights.*[7]

Father assigns error to the circuit court's orders terminating his parental rights. Although he fails to contest the sufficiency of the circuit court's factual basis for terminating his parental rights, he asserts that the evidence was insufficient as a result of uncle's custody petitions. We disagree.

Before a circuit court may order the termination of a parent's parental rights, the court "shall give a consideration to granting custody to a person with a legitimate interest." Code § 16.1-283(A). We have "interpreted this provision to require agency consideration of all 'reasonable options for placement with immediate relatives' as a prerequisite to a parental termination decision." *Pilenza v. Nelson Cnty. Dep't of Soc. Servs.*, 71 Va. App. 650, 654 (2020) (quoting *Bagley v. City of Richmond Dep't of Soc. Servs.*, 59 Va. App. 522, 524 (2012)).

Thus, the Department "has the burden to show that no reasonable alternatives exist[] [and] relatives who may be considered as alternatives have no duty to present themselves as such." *Sauer v. Franklin Cnty. Dep't of Soc. Servs.*, 18 Va. App. 769, 771 (1994). "Although mandatory, this obligation is limited." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 567 (2018). Further, we have repeatedly found this statutory prerequisite to be met when a relative testifies at the circuit court hearing so that the court can assess the suitability of the relative for placement. *See, e.g.*, *id.* at 568 (finding the testimony of "several potential relatives" and evidence of the Department's investigation provided circuit court with "ample evidence" to consider potential relative placements); *Brown v. Spotsylvania Dep't of Soc. Servs.*, 43 Va. App. 205, 218 (2004) (finding evidence that a grandmother "testified at the hearing and

---

[7] Father also challenges the circuit court's companion orders approving the Department's foster care plan's goal of adoption, instead of relative placement. However, our decision here "necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms*, 46 Va. App. at 265 n.3.

informed the court of her 'suitability and willingness' to take [minor] into her custody" to satisfy Code § 16.1-283(A)); *Hawthorne v. Smyth Cnty. Dep't of Soc. Servs.*, 33 Va. App. 130, 139 (2000) (finding testimony of appellant father's aunt concerning her willingness and suitability for placement to satisfy Code § 16.1-283(A), though the circuit court eventually terminated his parental rights).

Hence, to comply with Code § 16.1-283(A), the Department was required to consider the interests of relatives potentially interested in placement and to provide the circuit court with enough information to make an informed determination of whether a relative placement was suitable. And the circuit court had to give appropriate consideration to that information in making its determination.

Here, it is clear from the record that the circuit court satisfied its obligation based on the evidence presented by the Department. The record indicates that the Department identified uncle as one of the potential relative placements for the children and began supplying him and other relatives with services to prepare them for the potential placement. At the *ore tenus* hearing, uncle was permitted to take the stand in support of his petitions, and he testified regarding his willingness and suitability to serve as a relative placement. In particular, he noted that he had a job and, on some occasions, had previously helped S.R. with her homework. Thus, it is clear from uncle's testimony and involvement that the Department satisfied its obligation to identify "reasonable" relative placements. *Sauer*, 18 Va. App. at 771.

However, the record reflects facts from which the circuit court could reasonably conclude uncle was inappropriate for placement. As testified to by Moore, uncle had "very limited contact with the Department" and he "failed to attend training as requested to become an approved provider to be considered for placement." Uncle also admitted to these communication shortcomings. He also conceded that he delayed his trauma classes for six months and that he failed to undergo his

required counseling. Uncle's testimony also showed that he was uncertain regarding whether he believed father abused S.R. and "was involved with child pornography." In addition, as documented by the Department, uncle lived with great grandmother who shared the belief that the father had not sexually abused S.R. Moore also opined that uncle and great grandmother's denial of the abuse could lead to S.R. regressing in her recovery. Hence, the record reflected that there were significant concerns with uncle pertaining to his fitness for custody.

Moreover, the Department introduced evidence that due to the trauma S.R. suffered at the hands of father, *any* relative placement in this case was inadvisable. For example, Slate provided expert testimony concerning S.R.'s trauma responses and noting that the child's extreme negative reactions towards her biological family were consistent with the severe sexual abuse and neglect she suffered while in their care. As a result, Slate recommended to the Department that S.R. and M.R. not have any contact with family members to protect S.R.'s progress.

Ultimately, the circuit court was tasked with assessing whether uncle was an appropriate placement for the children. The record here indicates that the circuit court carefully considered all evidence before reaching its conclusion. In denying uncle's custody petitions, the circuit court simply deemed the Department's evidence more persuasive while noting that uncle failed to meet his burden under Code § 16.1-283(A). *See Sauer*, 18 Va. App. at 771. Thus, the circuit court was presented with sufficient evidence and fully considered that evidence before making its determination to terminate father's parental rights and deny uncle's custody petitions.

Since we defer to the circuit court's judgment "based on evidence heard *ore tenus* unless plainly wrong or without support," *Castillo*, 68 Va. App. at 568, we decline to disturb the circuit court's ruling that uncle was not a suitable placement. Thus, we find that the Department satisfied its obligation in attempting to identify relative placements and further find that the circuit court did

not err in denying uncle's custody petitions.  Moreover, we find the evidence sufficient and hold that the circuit court did not err in terminating father's residual parental rights.

### III. CONCLUSION

For the foregoing reasons, we find no error.  Therefore, the circuit court's judgment is affirmed.

*Affirmed.*